```
                 IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ALABAMA
                          SOUTHERN DIVISION
```

FILED

04 FEB 13 PM 2:34

U.S. DISTRICT COURT
N.D. OF ALABAMA

TANYA MORALES,          )
                          )     CIVIL ACTION NO.
     Plaintiff,      )     03-AR-3383-S
                          )
v.                     )
                          )
ESSEX CRANE RENTAL CORP.,    )
                          )
     Defendant.      )

ENTERED

FEB 13 2004

## MEMORANDUM OPINION

Before the court is the motion for summary judgment filed by
defendant, Essex Crane Rental Corp. ("Essex"). Essex also moves
to strike the affidavit of plaintiff, Tanya Morales ("Morales"),
included with her response to Essex' motion.

### Procedural History

On May 2, 2003, Morales filed an action in the Circuit Court
of Shelby County, Alabama against Essex and Leslie F. Kirby
("Kirby"). She alleged causes of action under Alabama law for
invasion of privacy, assault and battery, and outrage arising out
of her employment with Essex. No federal cause of action was
alleged. Morales and Kirby reached a *pro tanto* settlement and on
December 16, 2003 the action as against Kirby was dismissed. The
dismissal left Essex, a Delaware corporation with its principal
place of business in Buffalo Grove, Illinois, the sole remaining
defendant. Although Morales did not specify her damages in her
complaint, she testified at her deposition that she sought at



least $99,000, plus an unspecified amount of punitive and mental-anguish damages. Essex timely removed the state-court action to this court based on diversity jurisdiction. *See* 28 U.S.C. § 1332.

### Summary Judgment Facts

On July 21, 1997, Morales began as a receptionist with Essex. Morales often missed work, arrived late, and left early. She had been warned on at least one occasion that her absenteeism violated Essex' policy. Although Essex' policy indicated that employees would receive three written warnings, a written reprimand, and then a counseling from the branch manager before being terminated, Essex discharged Morales on June 10, 2002.

Morales filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Essex contends that the reason for her discharge was excessive absenteeism. Morales disputes that contention. Morales believes her discharge was the product of discrimination. She marked the cause of the discrimination as "OTHER" in her EEOC complaint, even though the form provides a "SEX" box. In her EEOC complaint, Morales alleged, "I believe that I was discharged and discriminated against because I was treated very unfairly in an unprofessional manner by a member of management which I found to be both an embarrassment and humiliating in the work environment." The offending "member of management" was Kirby.

When Morales was first hired, she executed an acknowledgment

that she had been provided a copy of Essex's employee handbook. Included in the handbook were Essex' personal rules and standards of conduct, which prohibit immoral or indecent conduct and any conduct constituting sexual or racial harassment. Employees are directed that "In order for Essex Crane to investigate complaints of such harassment -- an employee who alleges such harassment must complete a Complaint Form." A harassment complaint can be made to either a supervisor or the branch manager. A completed complaint form is to be given to the branch manager.

Morales never reported that she was being harassed on Essex' form. Nor did she ever report any harassment to her branch manager, as required in the handbook. Morales feared that if she reported the harassment she would be fired. Morales was unaware of the reporting procedures because she never read the handbook and her orientation did not cover the anti-harassment policy.

Kirby supervised Morales from early 2000 to December 2001. Debra McNair ("McNair") was Morales' supervisor from January 2002 until her termination. In February or March 2002, Morales told McNair that Kirby was harassing her. Neither Morales nor McNair reported the harassment to any other employee. Although McNair was supervising Morales' phone duties, McNair was only a sales administrative assistant. It is undisputed that she was not a member of management and had no ultimate authority over Kirby. In fact, following Morales' termination, McNair became Essex'

receptionist.

Morales alleges that Kirby constantly articulated his desire to have an affair with her. Kirby also stared at Morales' physical features and followed her around the office. Kirby allegedly massaged Morales' shoulders on several occasions and touched her breasts on one occasion. These touches were unwanted, but Morales never considered them abusive. Kirby also asked Morales about sex toys and the catalogue of sex toys which she had in her office. However, Morales admits that in addition to Kirby, several other employees looked at her sex catalogues, Victoria's Secret catalogues, and the sex books she kept at her desk.

Morales described her relationship with Kirby as a father/daughter relationship. She considered them to be "close friends." Morales voluntarily discussed with Kirby her sex life, menstrual problems, birth control methods, breast-reduction surgery, and other intimate details of her life. Kirby described the size of his penis and other intimate details of his life with Morales.

When Morales was unable to pay an electricity deposit, Kirby co-signed her electricity bill. He also gave Morales money to cover her bills. On occasion he provided Morales with lunch money. Kirby also gave Morales' son toys for Christmas and gave Morales money for Thanksgiving dinner.

### Motion to Strike

Morales has included in the record an affidavit that contradicts much of her deposition testimony. (Doc. #7, Ex. 1). Specifically, portions of paragraphs 1, 4, 7, 8, 9, 11, 13, 14, and 15 of her 15-paragraph affidavit aver facts directly contrary to answers and statements given in her deposition. Parties cannot create an issue of material fact by submitting an affidavit that merely contradicts, without explanation, previous deposition testimony. *Irby v. Bittick*, 44 F.3d 949, 959 n.2 (11th Cir. 1995); *Van T. Junkins & Assoc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Morales attempts to explain the discrepancies as the product of fatigue following "over two days" of testimony. However, the record reflects that Morales was deposed on August 14, 2003, and subsequently on September 16, 2003. More than a month passed between these two days and Morales offered no supplement. Fatigue is not a sufficient explanation for contradicting prior deposition testimony.  The affidavit will be stricken.[1]

---

[1] It is unnecessary to strike portions of the factual statement contained in Morales' brief. Viewing evidence in the light most favorable to the nonmoving party does not mean that the court is constrained to accept all of nonmovant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994). The nonmovant is given the benefit of every *reasonable* inference, not every metaphysical doubt. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). Statements that do not comport with the record before the court are not to be accepted.

**Analysis**

Title VII imposes liability on employers for sexual harassment, but the individual harasser cannot be held personally liable under this federal statute. *Hinson v. Clinch County*, 231 F.3d 821, 826 n.6 (11th Cir. 2000); *Smith v. Lomax,* 45 F.3d 402, 403 n.4 (11th Cir. 1995) (individuals "cannot be held liable under the ADEA or Title VII"); *Holt v. Lewis*, 955 F. Supp. 1385, 1386 (N.D. Ala. 1995) ("The relief granted under Title VII is against the employer.") (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)). Alabama law does not recognize an independent cause of action for sexual harassment. *See, e.g., Ex parte Atmore Cmty. Hosp.*, 719 So.2d 1190 (Ala. 1998). However, common-law actions can be brought against the individual harasser, even where the employer is a corporation. *Crigler v. Salac*, 438 So.2d 1375, 1382 (Ala. 1983). The common law in Alabama further provides victims of harassment an avenue in certain circumstances to hold the corporation liable for the harasser's actions. *Potts v. BE & K Constr. Co.*, 604 So.2d 398, 400 (Ala. 1992). This is what Morales' action attempts to accomplish, imposing liability upon Essex for the alleged commission of intentional torts by Kirby.

Employer liability for sexual harassment under Alabama's common law is not as easy to prove as the liability created by Title VII. For an employer to be held liable, the victim must

show that: (1) the harasser's wrongful acts were committed in the line and scope of employment; (2) the acts were committed in furtherance of the employer's business; or (3) the employer participated in, authorized, or ratified the wrongful acts. *Mardis v. Robbins Tire & Rubber Co.,* 669 So.2d 885, 889 (Ala. 1995); *Potts,* 604 So.2d at 400. Morales concedes that Kirby's alleged conduct was outside the line and scope of his employment and did not further Essex' business. *See also Doe v. Swift,* 570 So.2d 1209 (Ala. 1990). She likewise concedes that Kirby was her only alleged harasser and that Essex neither participated in nor authorized Kirby's conduct. However, Morales argues that Essex ratified Kirby's conduct.

To show ratification, in addition to proving the underlying tortious conduct of Kirby, Morales must present "substantial evidence" that Essex either expressly adopted Kirby's alleged conduct or implicitly approved of it. *Potts,* 604 So.2d at 400. This is done by showing that: (1) Essex had actual knowledge of Kirby's tortious conduct and that the tortious conduct was directed at and visited upon Morales; (2) based upon this knowledge, Essex knew, or should have known, that such conduct constituted sexual harassment; and (3) Essex failed to take "adequate steps" to remedy the situation. *Machen v. Childersburg Bancorporation, Inc.,* 761 So.2d 981, 985 (Ala. 1999)(citing *Potts,* 604 So.2d at 400); *see also Mardis,* 669 So.2d at 889.

Actual knowledge cannot be established when the victim fails to sufficiently complain. *Brannan & Guy, P.C. v. City of Montgomery*, 828 So.2d 914, 924 (Ala. 2002) (citing *Moman v. Gregerson's Foods, Inc.*, 570 So.2d 1215 (Ala. 1990)).

In *Moman*, a pharmacist's assistant alleged that a pharmacist had sexually harassed her. 570 So.2d at 1215. She sued both the offending pharmacist and Gregerson's, the store where they both worked. *Id*. Moman argued that Gregerson's had ratified the harasser's alleged misconduct because two other female employees had complained about Patel using foul language and telling dirty jokes without response. *Id*. at 1216. She further argued that she had notified the Gregerson's by complaining to her harasser, who was her supervisor. *Id*. The Alabama Supreme Court rejected both arguments.

The *Moman* court distinguished Moman's evidence from the evidence presented in *Busby v. Truswal Systems Corp.*, 551 So.2d 322 (Ala. 1989). The court found significant that in *Busby*, four employees had complained orally and in writing of the incidents of sexual harassment. *Moman*, 570 So.2d at 1216.  Those complaints were made to the alleged harasser's supervisor. *Id*. However, the harassment continued, raising an issue of material fact as to ratification. *Id*. Moman, on the other hand, had only complained to her harasser because she was afraid of losing her job. *Id*. Therefore, summary judgment was appropriate on the claims against

Gregerson's. *Id.* at 1217.

The Eleventh Circuit has addressed this issue more recently in *Kilgore v. Thompson & Brock Management, Inc.,* 93 F.3d 752 (11th Cir. 1997). There, plaintiffs brought state law claims of outrage and invasion of privacy and a Title VII claim arising from sexual harassment by a co-employee at the Pizza Hut restaurant in Jasper, Alabama. *Id.* at 753. Plaintiffs alleged that a delivery driver sexually harassed them. *Id.* at 754. They initially complained to the restaurant manager. *Id.* Subsequently, they complained to defendant's vice president. *Id.* The Eleventh Circuit held that defendant did not have knowledge of the alleged sexual harassment until plaintiffs contacted its vice president, since the restaurant manager was not part of its "higher management." *Id.*

Here, Morales only complained to Kirby and McNair. She made no further complaints because, like Moman, she feared that she would lose her job. Although McNair was Morales' supervisor, she, like the restaurant manager in *Kilgore*, was not part of higher management. In fact, unlike the restaurant manager in *Kilgore*, McNair did not even have supervisory authority over Morales' harasser. Morales fails to distinguish, much less address, this binding precedent in her response. Consequently, Morales is unable to establish that Essex had actual knowledge of the alleged sexual harassment and unable to show that Essex ratified

Kirby's alleged conduct.[2] Essex' motion for summary judgment will be granted by separate order.

DONE this _13th_ day of February, 2004.

_[signature]_
_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

_____

[2] The court does not reach Essex' challenges to individual elements of Morales' invasion of privacy, assault and battery, and outrage claims.